COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Overton


KEVIN S. VOAGE

                                                         MEMORANDUM OPINION*
v.        Record No. 1984-03-2                              PER CURIAM
                                                         FEBRUARY 3, 2004
SPOTSYLVANIA DEPARTMENT
 OF SOCIAL SERVICES



               FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                         William H. Ledbetter, Jr., Judge

          (Ricardo Rigual; Willis & Ashby, on brief), for appellant.

          (Joseph A. Vance, IV; Vance & Associates, on brief), for appellee.

          No brief for the Guardian *ad litem* for the minor children.


          Kevin S. Voage, father, appeals a decision of the trial court terminating his parental rights to

his two minor children, H.V. and A.V.  On appeal, father contends the evidence was insufficient to

show that the Spotsylvania Department of Social Services made reasonable and appropriate efforts

to communicate with him and to assist him in remedying the conditions leading to the children's

foster care placement.  Father also argues that the trial court erred in terminating his parental rights

without making a specific finding in its final order that his failure to remedy the conditions leading

to their placement in foster care was "without good cause."  Upon reviewing the record and the

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  Rule 5A:27.

---

          * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

On appeal, we view the evidence and all reasonable inferences in the light most favorable to the Department, the prevailing party below. See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

H.V. was born in October 1997, and A.V. was born in September 1998. In March 2001, based on allegations of abuse and neglect, the Department removed the children from their mother's home where the mother's boyfriend also resided. The record indicates that earlier when father resided with the family, they had prior relations with the Department and that the children had been placed temporarily in foster care when the family resided in another state.

In October 2002, the juvenile and domestic relations district court (JDR court) terminated father's parental rights to both children pursuant to Code §§ 16.1-283(B), 16.1-283(C)(1) and 16.1-283(C)(2). Father appealed to the trial court, which held a hearing on the appeals on June 24, 2003.

Troi Coleman, a foster care worker, testified that when the children were removed from their mother's custody, the only information the Department had concerning father was that he was in a prison in California. Coleman telephoned the prison and learned father was no longer incarcerated there. When father telephoned the Department on August 15, 2001, Coleman explained to father that the children were in foster care and that a foster care service plan outlined things both parents needed to do in order to obtain custody of the children. The foster care service plans dated April 2001 provided that father was to attend parenting classes, maintain contact with the Department, maintain suitable housing, complete a psychological evaluation and follow any recommendations therefrom, and attend counseling and anger management classes. Coleman testified that father, who at that time was not in prison, was "adamant" that he had not been involved in the children's placement in foster care and that "he did not need to do services." He also told

Coleman that his grandmother had money and he would be getting custody of the children. Coleman referred father to counsel who had been appointed to represent father, and she told father that the attorney had a copy of the service plan. Coleman asked father about visiting the children, and father said he could not leave California because he was on parole.

Coleman next spoke with father in September 2001. Father again said he was going to get custody of the children, but he did not discuss taking advantage of any services or visiting the children. Father also did not discuss any plans he had for obtaining custody of the children. In September and October, Coleman attempted to reach father several more times to determine his status, but father did not respond to her messages. In December 2001, Coleman learned that father was back in prison. Coleman testified she did not inquire whether any services required by the foster care service plan were available to father through the state of California or the jail where father resided because father maintained that did not need "to do services." The Department permitted father to complete a parent/child evaluation conducted over the telephone while he was incarcerated and provided father with a copy of the foster care plan in April 2002 when Coleman learned that father did not receive a copy from his counsel.

Coleman testified that the children are "doing wonderfully" in foster care. Although they are with separate foster families, they see each other often and are interacting as siblings. The children are progressing and developing appropriately. Ann Henley, a social worker, also testified that the children are "doing amazingly well" and that the children's single most important need is permanency. They have healthy attachment bonds with the foster families, and the foster families want to adopt the children.

Henley also stated that father cooperated with her during the parent child evaluation she administered over the telephone. She testified that earlier while the family was intact and living in North Carolina, father did not participate in any services offered to the family by the local social

services department although he was "very aware" that the children were at imminent risk of being placed in foster care. In addition, father has been convicted for attempted murder, and he has an extensive criminal history with convictions dating back to 1979. Father last saw the children in June 1999, and he has had no contact with the children in four years. Henley opined that father could not have a bond with the children. She also testified that the children need permanency because of their developmental risk factors and that it was in the best interests of the children that father's parental rights be terminated.

Father testified by telephone that he had violated his parole and he would be released from prison on January 2, 2004. Father said he would reside in California upon his release, but he planned to relocate soon thereafter to North Carolina where he would reside with family. Father also said that in the past he tried to telephone the Department but his calls were not answered. Father testified that he received a copy of the foster care service plan in August 2002, one year after he first spoke with Coleman. Father admitted that he questioned why he was required to complete services when he had nothing to do with the children's placement into foster care, but he testified he was willing to accept any services after his release from prison. Father stated he was unable to complete a parenting class while he was incarcerated because the prison did not offer such a class. He stated that he completed an anger management class that was required of all the inmates, and he admitted that he had not attempted to transfer his parole from California to Virginia when he was out of prison.

## Analysis

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

- 4 -

On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(C)(2) requires the Department to provide reasonable and appropriate services to the father. Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982) (the department must provide reasonable and appropriate services to a delinquent parent prior to terminating his rights). The services offered by the Department must be reasonable and appropriate given the circumstances of a particular case. See Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992). However, the Department was not required to "force its services upon an unwilling or disinterested parent." Harris, 223 Va. at 243, 288 S.E.2d at 415.

When advised that a foster care plan existed containing services and responsibilities that father needed to complete in order to obtain custody of the children, father initially said he did not "need" any services. It was not until the time of the hearing that father expressed a desire to accept and complete any services required by the Department. The Department made numerous attempts to communicate further with father and to determine his status. However, often the Department was unaware of father's location or father failed to return their telephone calls. The trial court found that the Department offered father services, which he "adamantly" refused. In addition, the record shows that father failed to participate in any services offered by a North Carolina social services agency when the family resided in that state and the children were at imminent risk of being removed from his custody.

- 5 -

Code § 16.1-283(C)(1) provides that father's parental rights may be terminated if it is shown by clear and convincing evidence that it is in the best interests of the children and that father has

> without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child[ren] for a period of six months after the child[ren]'s placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that [father] ha[s] failed without good cause to communicate on a continuing and planned basis with the child[ren] for a period of six months shall constitute prima facie evidence of this condition[.]

Father failed to maintain continuing contact with the children for four years. He last saw them in June 1999 when H.V. was almost two years old and A.V. was not yet one year old. The social worker opined that any bond that may have formed between father and the children prior to June 1999 could not have continued to exist since he has been away from the children. In addition, the record shows that father has made little to no effort to contact the children, to establish a relationship with them, or to plan for their future care. When he was released from prison in April 2001, father did not attempt to transfer his parole to Virginia where he could be near the children. Indeed, within a few months of his release from prison, father committed a parole violation and was again incarcerated by December 2001. Although father has indicated that he wants to obtain custody of the children, father has done little toward that end despite the fact that he has been advised of the steps he needs to take in order to achieve that goal. Moreover,

> while long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson, 14 Va. App. at 340, 417 S.E.2d at 5.

The record shows that the children have been in foster care since March 2001 and have not seen father since June 1999.  They need permanency in their lives because of their developmental risk factors.  The children are doing well with their foster families and have formed bonds with the families who wish to adopt the children.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).  Therefore, the record supports the trial court's finding that termination of father's parental rights is in the best interests of the children.

Father argues that the absence of specific language in the trial court's final order stating that father failed "without good cause" to remedy the conditions which led to the children's placement in foster care renders the trial court's finding insufficient.  However, the record does not show that father objected to the wording of the final termination order.  Rather, father's counsel signed the trial court order "seen and object," without stating any specific objection to the order.  Therefore, the issue was not raised in the trial court and we will not consider it on appeal.  See Rule 5A:18.

This record supports the trial court's finding that the best interests of the children would be served by terminating father's parental rights pursuant to Code § 16.1-283(C).  It is apparent that father is unable to care for the children and is unable to remedy within a reasonable time the conditions which led to his children's placement in foster care.  Father has also failed to maintain continuing contact with the children and to substantially plan for the future of the children, notwithstanding the reasonable and appropriate efforts of the Department.  Accordingly, we summarily affirm the judgment.

Affirmed.